## Case No. 4,804.

**FIRST NAT. BANK OF MT. PLEASANT v. DUNCAN et al.**

[35 Leg. Int. 251; 25 Pittsb. Leg. J. 169; 24 Int. Rev. Rec. 206; 7 N. Y. Wkly. Dig. 63; 6 Reporter, 69; 6 Wkly. Notes Cas. 158.] [1]

Circuit Court, W. D. Pennsylvania. June 3, 1878. [2]

D. T. Watson and Geo. Shiras, Jr., for plaintiffs in error.

John Dalzell (John H. Hampton with him). contra.

Before STRONG, Circuit Justice, and McKENNAN, Circuit Judge.

STRONG, Circuit Justice. In the court below this was an action brought by [William] Duncan and Brother, partners, to recover the penalties prescribed by the acts of congress relating to national banks, for charging and taking usurious interest on loans made by the First National Bank of Mt. Pleasant to the plaintiffs. At the trial in the district court [Case No. 4,135] evidence was given tending to prove that at different times the bank had made sundry loans to the plaintiffs,

---

[1] [Reprinted from 35 Leg. Int. 251, by permission. 7 N. Y. Wkly. Dig. 63, and 6 Reporter, 69, contain only partial reports.]

[2] [Reversing Case No. 4,135.]

reserving and charging therefor interest at the rate of nine per cent. The plaintiffs claimed that interest had been paid at that rate, and that in consequence thereof they were entitled to recover from the banking association twice the amount thus paid. Numerous grounds of defence were taken by the bank, none of which were sustained by the court, and the jury was instructed to return a verdict for the plaintiffs. The record having been removed into this court, and errors having been assigned to the rulings of the district judge, we are brought to a consideration of the defences set up and overruled. It is, however, unnecessary to refer to more than one of them, for if it should have been sustained, as we think it ought to have been, if proved, it is fatal to the plaintiffs' right of recovery.

It appears by the record that at the trial the defendants offered to prove that since the year 1869, and prior to January 1st, 1873, many state banks of issue had been organized in the state of Pennsylvania under the law of the state; that they had carried on business under such organization ever since, and that the rate of interest limited by the laws of the state for these several banks, at the time of their organization and ever since was "such an amount of interest as should be agreed upon between the bank and the borrower, or customer." This offer was made in connection with evidence already given, and other to be offered, showing that the First National Bank of Mt. Pleasant is located in Pennsylvania, and that all the interest charged the plaintiffs for which this action was brought was at a rate agreed upon between the plaintiffs and the defendant bank. The offer was overruled, and it was then renewed in different forms. Among others, the defendants offered to prove "that there is no general statute in Pennsylvania limiting the rate of interest for state banks specifically, but that there had been organized under the laws of the state, in the state since 1869, at least sixteen state banks of issue, which since 1871 have carried on and still carry on business under the said organization and laws, and that by the laws of the state of Pennsylvania all of the said banks are allowed, and have been since 1871, and still are allowed to charge a rate of interest and discount of ten per centum per annum." All these renewed offers were also overruled, and the court charged the jury as follows: "The legal rate of interest in Pennsylvania is six per cent., the rate of discount allowed to banks of issue is also six per cent., and no more. It is true that there are some banks that, by special acts of assembly are allowed to charge more, but these are exceptions to the general laws of the state. Congress deals with general rules, and when it excepts banks of issue under the state laws, it means the general law applicable to the whole state, and relating to banks of issue all over the state. The special acts

authorizing banks of issue, if there are any, apply only to the particular banks created by them, or permitted by them to take more than six per cent., and these laws are laws unto these banks only. The general banking laws of Pennsylvania prohibit the taking more than six per cent. discount. The national banking law prohibits a national bank in Pennsylvania from taking more."

This instruction given to the jury, and the rulings of the district court by which the evidence offered was excluded, were erroneous. They were founded upon a misconception of the provisions of the acts of congress under which national banking associations are organized, and exist. The limitations of the rates of interest which such associations may charge and take are such only as are prescribed in those acts. The associations derive no power from the states and they are not subject to restrictions imposed by the states. The rates of interest prescribed by the states for their own institutions or for the public generally, are rules for national banks only so far as they are made such by congress, and only in force of the acts of congress. The national banking act has enacted that any banking association "may take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws of the state, territory, or district where the bank is located, and no more, except that where by the laws of any state a different rate is limited for banks of issue organized under state laws, the rate so limited shall be allowed for associations organized or existing in any such state under this title." Rev. St. § 5197. The purpose sought to be accomplished by this exception is very evident. It was fully stated in Tiffany v. National Bank of Missouri, 18 Wall. [85 U. S.] 409, to which it may be well to recur. The supreme court of the United States there said: "It cannot be doubted, in view of the purpose of congress in providing for the organization of national banking associations, that it was intended to give them a firm footing in the different states where they might be located. It was expected they would come into competition with state banks, and it was intended to give them at least equal advantages in such competition. In order to accomplish this they were empowered to reserve interest at the same rates, whatever those rates might be, which were allowed to similar state institutions. This was considered indispensable to protect them against possible unfriendly state legislation. Obviously, if state statutes should allow to their banks of issue a rate of interest greater than the ordinary rate allowed to natural persons, national banking associations could not compete with them unless allowed the same. . . . The only mode of guarding against such contingencies was that which, we think, congress adopted. It was to allow

to national associations the rate allowed by the state to natural persons generally, and a higher rate, if state banks of issue were authorized to charge a higher rate. This construction accords with the purpose of congress and carries it out. It accords with the spirit of all the legislation of congress. National banks have been national favorites. They were established for the purpose, in part, of providing a currency for the whole country, and in part to create market for the loans of the general government. It could not have been intended, therefore, to expose them to the hazard of unfriendly legislation by the states, or to ruinous competition with state banks. On the contrary much has been done to insure their taking the place of state banks. The latter have been substantially taxed out of existence." Certainly their circulation has been. We have quoted thus fully from the language of the supreme court, because it bears directly upon the present case and shows the meaning of the act of congress. It shows what indeed seems very plain on the face of the act itself, that national banks are authorized to reserve and take interest on loans made by them at such rates as are allowed by state law to state banks of issue in the states where the national banks are located. In reserving and taking interest at such rates they act within the authority given them, violate no law, and render themselves liable to no penalties.

The learned judge of the district court was of opinion that because it was not shown, or offered to be shown that the state banks of issue incorporated under the state laws, and severally authorized to reserve and take interest at the rate of ten per cent., or at any rate agreed upon with the borrowers, are authorized, by general law, to charge more than six per centum, therefore national banks are not. His charge to the jury was, as has been stated, "Congress deals with general rules, and when it excepts banks of issue under the state laws, it means the general law applicable to the whole state, and relating to banks of issue all over the state." In this opinion we do not concur. It interpolates in the statute words which are not there, and it disregards the plain purpose for which the excepting clause was inserted. The act of congress declares that where, by the laws of any state, a rate of interest different from the general rate shall be limited, or allowed, for state banks of issue, national banks shall be allowed the same. It says not a word of allowance to the banks by general law. Charters offered by special law, granting special privileges to those who accept the offer, are as clearly laws of the state as are the most general enactments. Until recently in Pennsylvania state banks were always organized under special laws applicable solely to each bank. There was no general banking law, and no rate of interest limited by general enactment for banks as

such, and as a class. Each bank had its own peculiar privileges though prior to 1869 generally restricted to charging the rates of interest allowed for natural persons. And in many other states all state banking institutions are organized under such laws, and they derive all their powers from such legislation. Whatever authority they exercise under their charters is limited or accorded to them by the law of the state. And if we look to the purpose of congress exhibited in the national banking act (the purpose of which we have spoken), what difference does it make whether state banks are authorized to take more than the interest allowed to natural persons, by special, or by general laws? In either case they would encounter favored rivals, and a destructive competition, against which they could not stand, if they are not permitted to reserve and take interest at the rate accorded to the state institutions. In either case the unfriendly state legislation, and the ruinous competition, against which congress intended to guard, would be equally possible. States might establish banks along side of every national bank, and give them powers against which the national banking associations could not compete. A construction of the act of congress that opens the door to such results cannot be accepted as the true one. It is inconsistent with the letter of the act, and still more with its purpose and spirit.

We hold therefore that the evidence offered by the defendants should have been received. If there are state banks of issue in Pennsylvania, authorized either by general or special law to take interest on loans made by them at such rates as may be agreed upon between them and the borrowers, the defendants have transgressed no act of congress, by taking nine per cent. from the plaintiffs (that have been the rate agreed upon), and they are not liable in this action. The judgment of the district court is reversed, and a new trial is ordered.